**Decided August 24, 1984**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| JAMES S. SIROK, | ) | CIVIL ACTION NO. 84-0003 |
| Plaintiff, | ) | |
| vs. | ) | DECISION AND ORDER |
| ROTEC ENGINEERING, INC., | ) | |
| Defendant. | ) | |

Plaintiff filed a Complaint in this matter on March 27, 1984; seeking damages for misrepresentation, breach of warranty, product liability, breach of contract, intentional infliction of emotional distress, and conversion, all arising from the sale by defendant to plaintiff of a Rotec Rally III ultralight aircraft in 1983. On May 14, 1984 defendant moved to dismiss the action for lack of _in personam_ jurisdiction, or, alternatively, to transfer this case to the Northern District of Texas, Dallas Division, under 28 U.S.C. Section 1404, for the convenience of the parties and witnesses and in the interest of justice. In response, plaintiff filed a Motion to Strike defendant's motions pursuant to Local Rules 110-8 and 100-3. Since the Motion to Strike may be dispositive of both motions now before the Court, it will be addressed first.

## MOTION TO STRIKE

Defendant is represented in this action by a Dallas, Texas law firm, and an attorney thereof, Mr. Richard Young, who resides and is licensed to practice law in Texas.  Mr. Young filed an application to this Court, pursuant to Local Rule 110-1, for admission pro hac vice but has not associated with local counsel as required by Local Rules.

L.R. 110-2(a) of the Local Rules for the District Court for the Northern Mariana Islands provides,

> "Except as otherwise provided by these Rules, only members of this Court's bar or an attorney otherwise authorized by these Rules to practice before this Court may appear for a party, sign stipulations, receive payment or enter satisfaction or judgment, decree or order."

L.R. 110-1(b)(3) provides,

> "Any attorney admitted to practice before this Court, but who does not reside in and have an office in the Northern Mariana Islands, may practice only by associating with local counsel as required by subsection (f) of this Rule."

L.R. 110-1(f) provides,

> "Designation of Local Counsel.  An attorney applying to practice before this Court under subsection (b)(3) or (d)... shall assciate as co-counsel an attorney who is an active member in good standing of this Court's bar...."

L.R. 110-8(a) provides,

> "A person shall neither exercise

the privileges of a member of this Court's bar or otherwise represent entitlement to exercise those privileges if a person:

(1) Is not admitted to this Court's bar; or

(2) Has not obtained leave of Court to appear in a proceeding..."

L.R. 110-8(b) further provides,

"A person who violates Rule 110-8 may be held in contempt of court and appropriately sanctioned."

L.R. 100-3 provides that,

"The failure of counsel or any party to comply with any of these Rules is a ground for the imposition of sanctions."

Though Mr. Young has not fully complied with our Local Rules, and while this Court has consistently strictly enforced Rule 110, the circumstances at this stage of the litigation in this case warrant a very limited exception to the Rule.

Defendant appears here, and has responded to plaintiff's Complaint, only for the purpose of challenging this Court's personal jurisdiction over it. No Answer to the Complaint has yet been filed with the Court. Moreover, all of defendant's pleadings have been filed by mail, and the hearing wherein the instant motions were heard was conducted by telephone with defendant's counsel in Texas.

Defendant's counsel has had no previous contact with this Court, nor apparently with this jurisdiction, and while most federal courts have rules similar to ours and thus he certainly

should have been aware that such a rule might have existed, in view of the very limited purpose for which he now appears it would be excessively burdensome to require that he associate with local counsel. Moreover, Mr. Young has expressed a desire to cooperate with this Court and has shown willingness to fully comply with our Local Rules in the event these proceedings continue further in this jurisdiction.

In this situation, the Court finds that strict compliance with Local Rule 110 is not necessary, and plaintiff's Motion to Strike is DENIED.

## MOTION TO DISMISS OR TRANSFER

This leaves the question of whether this Court has in personam jurisdiction over defendant Rotec Engineering, Inc. (Rotec), consistent with the requirements of due process under the Fourteenth Amendment.

Plaintiff is a resident of the Northern Mariana Islands who purchased an ultralight aircraft from defendant. Defendant is a Texas corporation and has no office or salesmen in the Northern Marianas. None of defendant's employees have ever visited the Northern Marianas in connection with the business, and this single sale of an ultralight plane to plaintiff is the only sale the company has ever made here. Defendant does, however, advertise in a widely circulated trade magazine which is regularly sold in the Northern Marianas, and it advertises itself therein as a worldwide distributor of ultralight aircraft. It

was in response to such an ad that plaintiff first became interested in acquiring the Rally III ultralight airplane.

In 1981, plaintiff purchased several monthly copies of the magazine entitled "Flying" from Joeten Enterprises in Saipan. That magazine often contained Rotec's advertisements promoting the sale of its product and offered to provide detailed information on the ultralight aircraft in exchange for a payment of $5.00.

In September, 1981 plaintiff sent $5.00 to Rotec, requesting that detailed information be sent to him as Assistant Attorney General for the Commonwealth of the Northern Mariana Islands.[1] He received an information packet from Rotec in October, 1981. On March 8, 1982 plaintiff made a second request to Rotec for information concerning the Rally III ultralight airplane; he also expressed a desire to become a Rotec dealer in this area, and asked Rotec to provide him with the necessary information for becoming a dealer. On March 22, 1982 he received a second information package from Rotec, which on its face contained advertising stating that Rotec provides ultralight powered

_ ._ _ _ _ _ _ _ _

[1] Counsel for both parties, in their briefs and at oral argument, make several references to the fact that plaintiff used Attorney General of the Commonwealth of the Northern Mariana Islands letterhead stationary in his correspondence with Rotec, and that he requested all documents sent to him as Assistant Attorney General for the CNMI. The Court fails to see the significance of such actions to the specific issues herein, and thus, further mention of these arguments will not be made.

airplanes for the world. In the same package he received information on Rotec's dealership program.

On December 2, 1982 plaintiff visited Rotec's office in Duncanville, Texas for the purpose of obtaining more information on the various models of ultralight airplanes which Rotec sold. During this visit plaintiff discussed with Rotec's representatives the price of the Rally III, its performance specifications, and the costs of shipment to Saipan. He also informed Rotec's representatives that he lived on Saipan in the Northern Mariana Islands, and was considering the purchase of an ultralight airplane for use in this area. During this visit no commitment was made by either party with respect to the sale and purchase of an ultralight airplane.

On January 14, 1983 plaintiff sent full payment for the Rally III Model to Rotec's office in Duncanville, Texas. During the last week of January, 1983 he received a purchase order from Rotec, together with a letter requesting his signature on the purchase order and the return of a copy thereof to Rotec's office in Texas. Plaintiff signed the purchase order and returned it to Rotec. On April 5, 1983, the Rally III kit arrived in Saipan, at which time plaintiff paid the cost of shipping, insurance, handling, transfer and various other fees.

From May, 1983 until the complaint was filed in this matter, several letters, telexes and telephone calls passed between the plaintiff in Saipan and Rotec in Texas, regarding the shipment of parts, alleged malfunctions of the machine, etc. Also

1072

during this time, plaintiff ordered and Rotec shipped various parts and materials for the ultralight, as well as several correspondences regarding Rotec dealership events and promotions.

Defendant now asks this Court to dismiss plaintiff's suit for lack of jurisdiction over Rotec. Such a decision involves, first, a determination of whether Rotec is subject to suit in this jurisdiction under Title 7, Commonwealth Code, Division 1, Chapter 1, § 1102, the so-called "long-arm" statute of the Northern Marianas; and if so, whether that statute comports with the constitutional requirements of due process.

## 1. Long-arm Statute

Title 7, Commonwealth Code, Division 1, Chapter 1, § 1102 provides,

> (a) Any person, whether or not a citizen or resident of the Commonwealth, who in person or through an agent does any of the acts enumerated in this Section, thereby submits such person, and if not an individual, its personal representative, to the jurisdiction of the courts of the Commonwealth as to any cause of action arising from the doing of any of the following acts:
>
> 1. The transaction of any business within the Commonwealth;
>
> 2. Contracting to supply goods or services within the Commonwealth;
>
> 3. ....
>
> 4. Causing tortious injury or damage within the Commonwealth by an act or omission done within

1073

the Commonwealth;

> 5. Causing tortious injury or damage within the Commonwealth by an act or omission done outside the Commonwealth by a person engaged in business or other acts having impact within the Commonwealth, or who derives income or revenue from supplying goods and services within the Commonwealth.

> 6. ....

> 7. Any act done outside the Commonwealth which causes or results in any harmful impact, injury or damages, including pollution of air, land or water, within the Commonwealth; or

> 8. Any other act done within or outside the Commonwealth from which a cause of action arises and for which it would not be unreasonable, unfair and unjust to hold the person doing the act legally responsible in a court of the Commonwealth.

Plaintiff asserts jurisdiction under every subsection of Section 1102.

In this case, it would be difficult to premise jurisdiction on any one subsection of Section 1102, though cumulatively, defendant's acts are sufficient to subject it to this Court's jurisdiction. It has been held that merely advertising its business in the forum state is not "transacting business" for purposes of the long-arm statute, <u>Rich v. Chicago, B&Q Ry. Co.</u>, 74 P.1008; neither does the shipment of goods into the state by common carrier, without more, confer jurisdiction where the

///

1074

contract was executed elsewhere,[2/] Moore v. Little Giant Industries, 513 F.Supp. 1042 (1981).

It would seem that subsection 2 would most clearly apply to confer jurisdiction because Rotec arguably "contract[ed] to supply goods or services within the Commonwealth." However, the ultralight was shipped f.o.b. Texas, and plaintiff paid all costs and charges associated with shipment from Texas to Saipan. Thus, it could be said that Rotec contracted to no more than sell the ultralight to plaintiff at Rotec's place of business. A similar analysis is used with respect to subsection 5 in that Rotec cannot clearly be said to have "suppl[ied] goods and services within the Commonwealth."

Subsections 7 and 8 are relied on most heavily here to bring defendant's actions within the statute. Rotec did advertise in a widely circulated magazine which is regularly sold in the Northern Marianas, and it did agree to sell and place into shipment an ultralight airplane, knowing the buyer resided in and the airplane was being shipped to Saipan. Since the very liberal language of Section 1102 clearly indicates that the intent of the statute was to expand the jurisdiction of the Commonwealth's

— — — — — — — — — —

[2/]The purchase order provides: 'Acceptance of this purchase order is made in the State of Texas and is governed by the jurisdiction and laws of this state." At Paragraph 5 it states: "... this purchase order, when accepted by manufacturer, is the only contract controlling this sale and purchase, and... it contains all agreements, expressed or implied, either verbal or in writing, and purchaser acknowledges receipt of a copy of the same.

courts to the extent permitted by the due process clause of the Fourteenth Amendment, defendant's activities here are deemed to fall within the outer reaches of its provisions.

## 2. Due Process

The Court must next determine whether exercise of the jurisdiction conferred by the long-arm statute will satisfy the due process clause of the Fourteenth Amendment. The very fundamentally established principle in this respect is that certain "minimum contacts" must exist between a state and a non-resident defendant before that state can exercise jurisdiction over him, International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The defendant's contacts with the forum must be such that maintenance of a suit against him will not offend "traditional notions of fair play and substantial justice." Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

While there has been a strong trend toward liberalization of the restrictions on personal jurisdiction, the U.S. Supreme Court recently reaffirmed that personal jurisdiction cannot be found in the absence of some affiliations between the forum and the non-resident defendant. Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). One of the key factors in this respect is whether defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there. Thus, if the sale of a product is not simply an isolated occurrence, but

arises from the efforts of the defendant to serve, directly or indirectly, the market for its product in another state, it is not unreasonable to subject it to suit in that state. World-Wide Volkswagen Corp. v. Woodson, 100 S.Ct. at 567-68.

Here, it is clear that Rotec deliberately sought to advertise and market its goods on a world-wide basis, and that it willingly entered into a contract with a customer from another state, knowing its product would be shipped to and used in that foreign state. The exercise of jurisdiction based upon such contact, although in the context of only a single transaction, has often been held not incompatible with the due process clause of the Fourteenth Amendment.

### 3. Reasonableness

However, before jurisdiction will be asserted over a non-resident defendant, the reasonableness of doing so must be considered, World-wide Volkswagen Corp.v. Woodson, supra, and the court must determine whether, "under the totality of the circum-stances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." Taubler v. Giraud, 655 F.2d 991 (9th Cir. 1981).

The recent Ninth Circuit case of Olsen By Sheldon v. Government of Mexico, 729 F.2d 641 (9th Cir. 1984), recognizes seven factors to be applied, and their relative significance balanced, in determining whether exercising personal jurisdiction

///
///

is reasonable.[3/]

      1. **Burden of Defending.** A primary concern in assessing the reasonableness of jurisdiction is the burden on the defendant, though it is not dispositive and is to be considered in light of other relevant factors. World-wide Volkswagen Corp. v. Woodson, supra. In this case, however, the burden on defendant in defending this suit in the Northern Marianas is overwhelming.

      Defendant has a single place of business, located in Duncanville, Texas, and its employees number only thirty-five. Defendant has indicated that at least five of these employees will need to be called as witnesses, along with a number of experts, custodians of records, etc., all now located in Texas. On the other hand, it is difficult to see that plaintiff will need any witnesses, other than himself, from the Northern Marianas, and the presentation of his case will certainly not involve a significant portion of his work force.

      The ultralight aircraft, the physical evidence herein, is admittedly located in the Northern Marianas. However, as defendant points out, it would be far cheaper to ship the airplane and/or the parts thereof, to Texas than to fly the necessary personnel, experts, etc. to Saipan and there feed and shelter them for the duration of the trial. (Not to mention

- - - - - - - -

[3/] Only six of those factors are relevant here. The seventh addresses the issue of sovereign immunity and is only applicable to a suit against a foreign state.

during the extensive pre-trial discovery which must be conducted in a case of this sort). Inspection for both pre-trial and trial purposes may be accomplished by photographs and other investigative reports thus lessening the expense for both parties.

Finally, plaintiff is an attorney licensed and practicing in the Northern Marianas, and is conducting his case pro se. He has alleged very complex, and serious, charges against the defendant herein, the defense of which is a very lengthy and expensive proposition, even in the defendant's home forum. In the Northern Marianas, the cost would be increased multifold, and to force defendant to defend such a suit would, defendant contends, amount almost to extortion by the plaintiff. Plaintiff's costs, on the other hand, are minimal and are significantly less than defendant's, even if he is required to prosecute his case in Texas.

2. Extent of Purposeful Interjection Into Forum State. The extent of purposeful interjection by Rotec into Saipan was limited to its general advertisements in a trade magazine, its responses to plaintiff's repeated inquiries, and its knowing sale of a single product to a Northern Marianas resident.

3. Interests of Forum State. The Northern Marianas certainly has an interest in protecting its residents from injury and ensuring that they are fully compensated for their injuries. While, given the wide dispersion of Micronesia and the transient nature of its populations, this interest might be somewhat stronger than that of a stateside forum, there is in reality very

little practical difference. In this case, moreover, there is no special state interest involved; thus, this factor is of little significance to our determination.

4. <u>Most Efficient Resolution</u>. The purchase order which constitutes the contract between the parties specifically states that "[a]cceptance of this purchase order is made in the State of Texas and is governed by the jurisdiction and laws of this state." A portion of plaintiff's suit may, therefore, have to be tried in Texas. Furthermore, as mentioned above, though the physical evidence is located in Saipan, most of the witnesses are located in the State of Texas. Thus, the district court in Texas would be the most efficient judicial forum.

5. <u>Convenient and Effective Relief for Plaintiff</u> While this Court recognizes that individual claimants might be at a disadvantage when forced to follow a defendant to a distant state in order to hold it legally accountable, plaintiff's claims here are not so small or moderate as to effectively preclude the bringing of an action in a foreign forum-- "thus in effect making the company judgment proof." <u>McGee v. International Life Ins. Co.</u>, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Quite to the contrary, plaintiff alleges damages of several hundred thousand dollars, and thus will not be so easily deterred from prosecuting his claim in the Texas forum. Moreover, plaintiff has, himself, visited defendant's office in the State of Texas in relation to his purchase of the ultralight aircraft. He cannot, therefore, seriously claim any great inconvenience at having to

travel there once more to press his claim.

6. <u>Availability of an Alternative Forum</u>. There is no real question that the State of Texas provides a practical alternative forum in which plaintiff may pursue his claim.

After balancing the factors above, the Court concludes that in the interest of justice, for the relative convenience of the parties and witnesses, and economy to both parties, this case should be transferred to the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1404(a).

THEREFORE, it is hereby ORDERED that the above-entitled action be transferred to the District Court for the Northern District of Texas, Dallas Division, forthwith.

DATED this _____ day of August, 1984.